[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal brought against defendant Commissioner of the Department of Motor Vehicles (D.M.V.) under the provisions of General Statutes 4-183. For reasons hereinafter stated, the decision of the commissioner is affirmed.
The basic facts underlying the action are not in dispute and may by CT Page 4849 summarized as follows.
In May 1989 plaintiff held a valid motor vehicle operator's license and was an inspector with the Dealers Repairers/Emissions Division of D.M.V.
At the time, plaintiff, who had suffered "seizures", or what may be described as episodes of altered consciousness, was being treated by Dr. Michael Krinsky, a neurologist.
In connection with this medical problem, plaintiff had filed, on August 12, 1987 and January 19, 1989, Neurological Reports (Form P-142N) with D.M.V.
On May 4, 1989, while plaintiff was having lunch at Max's Pizza in Bloomfield, he had a "seizure" which resulted in his being taken to Mt. Sinai Hospital for treatment. Probably because plaintiff had a state vehicle with him, the Bloomfield Police Department notified D.M.V., Lt. Lee Telke, concerning plaintiff's condition. Lt. Telke in turn advised plaintiff's supervisor, Patrick A. Balisano, Division Manager of the Dealers 
Repairers/Emission Division, what occurred.
By memo dated May 8, 1989, Richard J. Preston, Division Chief of the Dealers Repairers/Emission Division, informed Mr. Balisano that when plaintiff returned to his duties at the department he would be assigned to office duties only on a temporary basis until his physical condition could be evaluated. Plaintiff was not to operate a state vehicle until Preston authorized it.
By letter dated May 16, 1989, plaintiff's neurologist, Dr. Krinsky, stated that plaintiff's anti-convulsant medication had been increased and he was approved for return to work at his regular duties.
Presumably plaintiff returned to work on or shortly after the date of Dr. Krinsky's letter.
Subsequently the matter was brought to the attention of Gladys O. Johnson, the chief of Drivers Services Division. Johnson's duties involved the suspension of operator's licenses.
After meeting at least twice with the "bureau chief", Johnson decided that plaintiff should be placed on what she termed "medical probation." This involved plaintiff's physician submitting periodic neurological reports on form P-142N.
At least one form P-142N was submitted by Dr. Krinsky on May 25, 1989. The report indicated, under the heading "History of any Disorder Relevant to Safe Operation of a Motor Vehicle" sequine disorder (grand mal) and that plaintiff's CT Page 4850 last episode of altered consciousness occurred on May 4, 1989. The form also contained information concerning plaintiff's medication.
On June 1, 1989 Johnson wrote to Dr. John T. Hornblow, a neurologist and the Chairman of the Department of Motor Vehicles Medical Advisory Board. (See General Statutes 14-46a through 14-46g). Johnson enclosed with her letter neurology reports dated May 25, 1987, January 19, 1989 and August 12, 1987, a copy of Dr. Krinsky's letter of May 16, 1989 and the memo from Lt. Telke dated May 4, 1989. By her letter, Johnson was seeking Dr. Hornblow's opinion concerning plaintiff's ability to safely operate a motor vehicle.
Dr. Hornblow replied to Johnson's letter dated June 12, 1989 in which he expressed his concern for plaintiff's continued operation of a motor vehicle as follows: "I just reviewed all of the materials forwarded to me relating to Mr. Daly. I will try and reach Dr. Krinsky for some clarification but I have some real misgivings about the patient driving at this time. I am aware of Dr. Krinsky's feelings as expressed in his letter of 5-16-89 — but I am also mindful that this is a patient who seems to break through at fairly regular intervals even though every Tegretol level reported in his various P-142N's shows a therapeutic level. The patient had a seizure in July, 1986 with a subsequent level reported as 8.0. He had another seizure in July, 1987 with a subsequent level reported as 8.7. Dr. Krinsky notes that he is seemingly compliant as regards his prescribed medications and so I think I would recommend suspension for some period of time."
The doctor stated that he was going to seek a record of plaintiff's Tegretol levels at the time of his seizures. In this way he stated it would be possible to determine if plaintiff was compliant with medical procedures. He also indicated that it was possible that plaintiff could never be controlled with Tegretol alone. He stated that he would be in touch with Johnson again after discussing the matter with Dr. Krinsky.
Johnson took no action on receipt of Dr. Hornblow's report.
On June 26, 1989, Dr. Hornblow again wrote to Johnson concerning plaintiff. Dr. Hornblow stated that he had been unable to reach Dr. Krinsky but that he had discussed the matter with Krinsky's colleague, Dr. Belt. From this conversation Hornblow concluded that plaintiff's Tegretol levels had not been drawn at the time seizures occurred. Because of this, he could not tell of plaintiff needed a second anti-convulsant or stricter adherence to the prescribed medication. From this, Hornblow recommended a period of suspension until the information could be obtained.
By memo dated July 22, 1989 Johnson informed Michael Krochmalvy, Chief Adjudicator, DMV Adjudication Division, of Dr. Hornblow's recommendation. In the memo Johnson expressed the likelihood that plaintiff "could be a danger to himself and others on the highways of CT Page 4851 Connecticut."
On the same day, plaintiff's license was suspended effective August 5, 1989 because of his medical condition.
Plaintiff appealed this decision and a hearing was scheduled for August 15, 1989. At the hearing no evidence was taken but the parties entered into a stipulation.
Under the terms of the stipulation, plaintiff was to be placed on informal medical probation for two years from March 23, 1989 to March 23, 1991. During the period of probation, plaintiff was to submit medical reports (P-142N) at six month intervals.
Also, the department was to remove from plaintiff's Driving History and the department's records and file all references to March 22, 1989 suspension and the August 5, 1989 suspension. In addition, the department's Medical Advisory Board would not review the matter during the period of medical probation unless a material change in circumstances occurred.
The hearing's officer stated that this settlement was fair and reasonable and that he would recommend it to the Commission. It was clearly stated by the hearing officer, however, that the final decision was up to the Commissioner.
The Commissioner, the named defendant in this action, by letter dated August 24, 1989 notified plaintiff's attorney that he was unable to approve the stipulation of August 15, 1989. In the letter the Commissioner summarized the reasons for his actions as follows: "I am unable to approve the Stipulation because it does not incorporate any of the findings and recommendations by Mrs. Johnson and Dr. Hornblow. In the judgment of these officials, Mr. Daly's medical condition is such that his operating privileges must be suspended. The terms of your Stipulation would not only permit Mr. Daly to operate, but would remove our authority to take further action in all but the most exceptional circumstances, when an injury to Mr. Daly or a member of the public had been suffered.
My interpretation of the available information is not intended to prejudge the issues or the ultimate facts involved. My basic concern is that, since there has been no evidentiary hearing at this time, involving matters of expert medical opinion as well as the basic credibility of the parties involved, I would be very remiss in approving a settlement of this nature."
The commissioner also stated that he was requesting that the matter be rescheduled for a full hearing on the facts before another adjudication.
In accordance with the commissioner's request, a full evidentiary hearing was held on September 21, 1989 with additional evidence being taken on October 26, 1989 and December 6, 1989. CT Page 4852
On January 2, 1990 the Administrative Law Judge issued his order with supporting findings of facts and conclusions of law.
The conclusion of facts was: "That Edward J. Daly is not a proper person to hold a Connecticut operator's license based upon available medical evidence."
The order was as follows:
"1. That the August 5, 1989 suspension of the operator's license of Edward J. Daly shall remain in effect until May 4, 1990.
2. That on May 4, 1990, Edward J. Daly shall be eligible for reinstatement of his Connecticut operator's license subject to the further provisions hereinafter set forth.
3. That in the event Edward J. Daly is eligible for reinstatement of his operator's license and is, in fact, reinstated on or after May 4, 1990, he shall, as a condition of reinstatement, submit neurological medical reports (DMV Form P-142N) to the Department of Motor Vehicles commencing three (3) months from the date of reinstatement and each and every three (3) months thereafter for a period of three (3) years.
4. In the event of a conscious-altering event or seizure, Edward J. Daly shall submit a neurological report (DMV Form P-142N) to the Department of Motor Vehicles within seven (7) days thereof and said report shall include evidence of the Tegretol/Prescription blood level at the time of said conscious-altering event or seizure."
The present appeal from the decision of January 2, 1990 was instituted under the provisions of General Statutes 4-183.
Section 4-183 (a) allows a person who has exhausted all administrative remedies within the agency and who is aggrieved by a final decision to appeal to the superior court.
Here it is found that plaintiff has exhausted all administrative remedies available to him within the Department of Motor Vehicles and is appealing a final decision.
Pleadings and proof of facts which constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal taken under 4-183 (a). As such, aggrievement is a threshold issue which is determined without reference to whether the claims of error on appeal are meritorious. Park City Hospital v. Commissioner of Hospital Health Care, 14 Conn. App. 415,416 (1988).
To find that he is aggrieved, plaintiff must pass a two fold test. CT Page 4853 "First, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." Nader v. Altermatt, 166 Conn. 43, 51 (1974).
Paragraph 20 of the complaint alleges that plaintiff is aggrieved by the decision in question which resulted in the suspension of his license and his placement on medical probation. Although plaintiff's motor vehicle operator's license has been reinstated as of this date, he is still subject to what plaintiff describes as medical probation. That is, his operator's permit is conditional, as stated on the order appealed from, on his submission of neurological medical reports every three months for a period of three years, together with other reports in the event of a seizure.
In view of plaintiff's probationary status, it must be concluded that he is aggrieved under the rule of the above cited case and it if found that he has standing to prosecute this appeal.
The court's review of the decision appealed from is subject to certain restraints based upon statute and case law. The scope of such review is specifically limited by the provisions of General Statutes 4-183 (j):
The function of the Court in reviewing the decision of the department here is not to reach its own conclusion upon the subordinate facts, but only to determine whether the conclusions of that agency, on such facts, are unreasonable or illogical. The Court is bound by the findings of the subordinate facts and the reasonable conclusions of facts made by the agency. Campisi v. Liquor Control Commission, 175 Conn. 295, 296.
Conclusions reached by the agency must be upheld by the Court if they are supported by the evidence that was presented at the hearing. The credibility of witnesses and the determination of issues of fact are matters within the province of the administrative agency. It is not the function of the Court to retry the case. The question is not whether the trial Court would have reached the same conclusion, but whether the record before the agency supports the action taken. Williams v. Liquor Control Commission, 175 Conn. 409, 414.
In summary, judicial review under existing law is very restricted. C H Enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 11, 12; Lawrence v. Kozlowski, 171 Conn. 705,707.
Plaintiff has set forth his claim for relief under four CT Page 4854 separate theories of law, each of which must be addressed by the court.
 I.
Plaintiff first claims that the defendant's decision to place him on "medical probation" after reinstatement on May 4, 1990 and he is in that status at present and will remain so until 1993. It is argued by plaintiff, and admitted by one of defendant's officer at the hearing, that no specific statutory or regulatory provision exists for the imposition of "medical probation." Plaintiff contends that in the absence of any such legal authority, defendant has no power to place him on "medical probation" and in so doing, he exceeded his authority under the law. Absent a grant of authority, any sanction meted out by defendant is necessarily void. Newington v. Mazzoccoli133 Conn. 146, 156 (1946).
It is noted, however, that although the term "medical probation" is found throughout the file, it was not used in the order in question. Paragraphs 2, 3 and 4 of the Order, which provide for the submission of form P-142N to DMV do not describe the reporting requirement as medical probation. The issue then is whether or not defendant had authority to include as a part of the order that plaintiff file the P-142N reports as directed.
General Statutes 14-36 (e) as it existed at all times pertinent to this appeal provides that:
 "If any applicant suffers from any physical defect or from any disease which might affect the operation by him of a motor vehicle, the Commissioner may require the applicant to demonstrate personally that, notwithstanding such defect or disease, he is a proper person to operate a motor vehicle and he may further require a certificate of such applicant's condition, signed by a medical authority designated by him, which certificate shall in all cases be treated as confidential by the commissioner. A license containing such limitation as the commissioner deems advisable, may be issued in any case, . . . ."
Based upon the language of the statute, it must be found that defendant did have legal authority to place restrictions on plaintiff's license when it was reissued in accordance with the order. There is no significance to the fact that procedure may from time to time have been referred to a "medical probation." The action complained of was within the authority granted by law to defendant and not ultra vires. If the sanction was within the limits prescribed by law, it may be CT Page 4855 challenged only for an abuse of discretion in its imposition. Paley v. Connecticut Medical Examiner's Board, 142 Conn. 522,529 (1955).
The fact that the statute uses the term "applicant" rather than "operator" is not significant. The statute deals with persons who may operate motor vehicles. Also, the order in question became effective after plaintiff's license had been suspended. Presumably at that point the term applicant would be applicable to him.
It is also noted that under the terms of the stipulation August 15, 1989 plaintiff agreed that he be placed on informal medical probation. In agreeing to be placed on medical probation, he impliedly agreed that defendant had authority to maintain people in that status.
 II.
It is also claimed by plaintiff that on July 22, 1989, defendant summarily suspended plaintiff's motor vehicle operator's permit and that this was illegal. Plaintiff bases his claim on General Statutes 4-182 (a) which provides that:
 (c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively required emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.
See also Hickey v. Commissioner of Motor Vehicles,170 Conn. 136, 144-145 (1971).
It is noted, however, that General Statutes 14-111 (a) authorizes defendant to suspend the right of any person to operate a motor vehicle for any cause he deems sufficient, with or without a hearing. See Dentamauro v. Motor Vehicles Commissioner, 20 Conn. Sup. 205, 208 (1956).
Section 4-142 (a) is a statute of general application CT Page 4856 effecting all state agencies while 14-111 (a) applies only to the commissioner of motor vehicles. Where there are two provisions in a statute, one of which is general and designed to apply to cover generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail and if both cannot apply, the particular provision will be treated as an exception to the general provision. Budkofsky v. Commissioner of Motor Vehicles, 177 Conn. 588, 592 (1979).
In the case at bar the notice dated July 22, 1989 informing plaintiff of his suspension set the effective date for such suspension at August 5, 1989 and informed him in prominent letter of his right to request a hearing. The notice also indicated a finding that due to plaintiff's medical condition his continued operation of a motor vehicle would be dangerous to himself and others.
It must be found that the notice and defendant's subsequent actions constituted substantial compliance with the emergency action provisions of General Statutes 4-182 (a). The action was certainly within the authority granted by General Statutes14-111 (a) and under the circumstances constituted substantial due process.
Considering all aspects of this claim, it cannot be found that defendant's action violated the substantial rights of plaintiff as required by General Statutes 4-183 (j).
 III.
Plaintiff further contends that the decision appealed from were not supported by findings of facts and was therefore arbitrary, capricious and illegal. As a part of this argument, plaintiff argues that the findings of fact do not support defendant's legal conclusions.
Defendant's single conclusion of law, upon which the disputed order rests, is as follows: "That Edward J. Daly is not a proper person to hold a Connecticut operator's license based upon available medical evidence."
Plaintiff claims that the findings of fact upon which the above conclusion rests were arbitrary and not supported by the evidence. The factual basis of some of the findings are not greatly in dispute. Findings 15 and 16, however, which support the conclusion of law were directly assailed by plaintiff.
These findings are: CT Page 4857
"16. The absence of blood samples at the time of Respondent's seizures precludes a determination of whether an event is the result of failure to adhere to the prescription regimen, the need for increased Tegretol dosage or of the need for the prescription of additional anti-convulsant.
17. The obtaining of a blood sample at the time of a seizure is a critically important factor in the determination of Respondent's ablilty to control his conscious-altering seizures."
The principal evidence supporting the above conclusion came from Dr. Hornblow whose report to Ms. Johnson on June 12, 1989 was a substantial factor in plaintiff's suspension. Dr. Hornblow testified at the hearing on September 21, 1989. He based his opinion on the information received from Ms. Johnson on June 12, 1989. As previously noted, this information included P-142N forms, Dr. Krinsky's letter of May 16, 1989, and the memo from Lt. Telke. He also discussed plaintiff's situation with Dr. Krinsky's associate.
Dr. Hornblow testified that it was uncertain as to whether the dosage levels prescribed were adequate to control the seizures or whether plaintiff's failure to take the medication as ordered reduced his Tegretol level. The doctor further stated that the way to determine this was to test plaintiff's Tegretol level immediately after a seizure. In this way, the proper level could be ascertained and, if necessary, modification could be made in the way plaintiff was taking the medication.
Plaintiff disagrees with Dr. Hornblow's opinion. The adjudicator, as finder of the facts, was free to accept it, however, and it supports the disputed finding of 16 and 17.
Finding 18, although not greatly in dispute, is significant and leads directly to the conclusion of law upon which the order is based.
"18. The fitness of the Respondent to operate a motor vehicle is dependent upon the proper control of events of altered consciousness."
There was ample evidence by which this adjudicator could have concluded that plaintiff had a disease which caused him to suffer seizures involving altered consciousness. For treatment of such condition, he was under the care of a neurologist who had prescribed medication to control such seizures. While plaintiff was under the care of his neurologist, with medication prescribed, he continued to suffer seizures. One of these attacks, that of May 4, 1989, occurred in a restaurant while CT Page 4858 plaintiff was on his lunch break while on duty.
The circumstances surrounding the event of May 4, 1989 indicate not only that the course of treatment designed to prevent the seizures was not working but that the seizures could come at inopportune times with little warning. This would support a conclusion that plaintiff had no proper control over his events of altered-consciousness and that this had an effect on his fitness to operate a motor vehicle.
The evidence supporting findings 16. and 17. indicate that plaintiff's condition could not be quickly corrected but would require time for tests and evaluation to determine the correct medical procedures and dosages.
Considering the effect of which a seizure might have on plaintiff and the public if such seizure occurred while he was operating a motor vehicle on the highway, it cannot be found that the conclusion of law reached by defendant was unreasonable or illegal.
It is significant to note that plaintiff's physician, Dr. Krinsky, recognized this situation and recommended that plaintiff refrain from driving for a period of time.
It must be concluded that the findings of fact, the conclusion of law and the order issued by defendant here are supported by the evidence and are not unreasonable or illogical or in excess of defendant's authority.
 IV.
Plaintiff also contends that defendant's actions have prejudiced his substantial rights. This, however, has not been established.
Having found that plaintiff's substantial rights have not been prejudiced, the decision of the agency appealed from is hereby affirmed. General Statutes 4-183j.
PURTILL, J.